FILED
CLERK, U.S. DISTRICT COURT
12/14/2018
CENTRAL DISTRICT OF CALIFORNIA
BY: ___CW___ DEPUTY

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ST. MICHAEL BALZARINI,<br><br>Plaintiff,<br><br>v.<br><br>RALPH DIAZ and DEAN BORDERS,<br><br>Defendants. | Case No. 5:18-cv-01962-RGK (MAAx)<br><br>**MEMORANDUM DECISION AND ORDER DISMISSING FIRST AMENDED COMPLAINT WITH LEAVE TO AMEND** |

## I.     INTRODUCTION

On September 13, 2018, Plaintiff St. Michael Balzarini ("Plaintiff"), currently incarcerated at the California Institution for Men in Chino, San Bernardino County, California (the "Prison"), proceeding *pro se* and *in forma pauperis*, filed a civil Complaint alleging violations of his civil rights pursuant to 42 U.S.C. § 1983 ("Section 1983"). (ECF No. 1.) On October 5, 2018, Plaintiff filed a First Amended Complaint. ("FAC," ECF No. 7.) The Court has screened the FAC as prescribed by 28 U.S.C. § 1915A and 28 U.S.C. § 1915(e)(2)(B). For the reasons stated below, the FAC is **DISMISSED WITH LEAVE TO AMEND**.

## II. SUMMARY OF PLAINTIFF'S ALLEGATIONS AND CLAIM FOR RELIEF

Plaintiff is a prisoner who suffers from end-stage Cirrhosis, which he contends makes him sensitive to heat and cold. (FAC 22[1].) The Prison is a facility that primarily houses prisoners who are disabled, elderly or have medical conditions, including inmates with heat and cold sensitivities. (*Id.* at 9, 10.) Plaintiff alleges that the Prison's heating and ventilation system is inadequate. (*Id.* at 8.) Specifically, he claims that the lack of ventilation in the building caused him to suffer a second-degree burn on his back or other unspecified harm. (*Id.*) In what appears to be an unfiled grievance or appeal listing a number of grievances (all but one unrelated to his FAC), Plaintiff explains further:

> 3. Air quality and temperature:
> There's no air-ventilation or heating in cell's [sic], you open window for air, and it's what ever the weather outside is.
> If it's cold outside, then its [sic] cold in the cell's [sic]
> . . .
> If it's 90°-100° F, then it's hotter in cell's [sic] because it's concrete buildings.
> Causing to be deprived of basic human need.
> . . .
> 6. These are not decent conditions or as any similarly situated inmates in the State Prison system.
> Chino Prison medical facility is run like third world prison.
> . . .

///

---

[1] The Complaint contains a series of interrupted paginations. Accordingly, the Court cites the page numbers generated by ECF.

> 7. . . . This state run high-risk medical facility is causing inadequate or inhumane conditions, in which the totality of conditions added up, create an overall effect that is unconstitutional.

(*Id.* at 12-13.)

Plaintiff submitted a Health Care Grievance on July 14, 2018 complaining that there was no air in the cells and claiming that it felt like a sweat box in that it was hotter in the cells than outside. (*Id.* at 18.) The grievance was rejected on July 20, 2018 with a reference to an attached letter with instructions. (*Id.*) A letter attached to the FAC, bearing the same date, directs Plaintiff to raise his concerns regarding inadequate living conditions with the Custody Staff rather than the Health Care Staff. (*Id.* at 16.)

In the meantime, on July 16, 2018, Plaintiff requested to be seen by the medical staff to care for a blister on his upper back allegedly caused by a "burn[] from heat in the building." (*Id.* at 27.) He was treated on July 17, 2018. (*Id.* at 27, 28, 30, 31.) Again on August 14, 2018, Plaintiff was seen by the medical staff for a burn to his upper back that occurred on August 7, 2018.[2] (*Id.* at 29.)

On August 8, 2018, during what he described as a "Level II" heat wave, Plaintiff submitted an Inmate/Parolee Appeal grievance requesting an emergency policy to lower temperatures at Facility C to a heat index of no more than 88 degrees, a policy for taking action during heat waves, and the repair of the air ventilation system in the building. (*Id.* at 22, 24.) He explained that:

> According to the Centers for Disease Control, fans are ineffective at temperatures over 95-degrees and actually increase body heat. Both cool-down showers and cold water

---

[2] It is unclear whether this is a new burn or the exacerbation or further treatment of the original burn of July 16, 2018.

3

        are effective only for brief periods and drinking large quantities
        of water can cause other medical complications.

(*Id.* at 24.)

On September 4, 2018, Plaintiff was interviewed regarding his August 8, 2018 grievance and received a written Second Level Appeal Response partially granting his requests to have prison officials create a policy for taking action during a heat wave and to fix the air and ventilation in the buildings ("Appeal Response"). (*Id.* at 20-21.) In this Appeal Response, Warden Borders and Associate Warden Ellis indicated that the Prison was "undergoing a project to replace and upgrade the cooling and ventilation systems." (*Id.* at 21.) The Appeal Response also explained the additional measures that the Prison had in place for Stage II heat alerts – "increased access to cool running water (showers), along with ice water . . . in the housing units . . . [and] from the hours 0600-2100 unit staff shall have the discretion to open the cell doors for all inmates housing in a Facility C housing unit." (*Id.*)[3]

Dissatisfied with the Appeal Response, Plaintiff submitted his comments for a Third Level Review on September 20, 2018. (*Id.* at 23.) There, he stated:

        You stated in interview, there's no funds now, nor will their
        [sic] be in the future to fix air-ventilation and heating in the
        cell's [sic]. So we continue to do without both. Making this
        not a medical facility, it should be close [sic] down then.

---

[3] The FAC includes a July 28, 2017 memorandum from Prison Captain Lemaster to the Facility C Custody Staff that details approved procedures to be used during an activation of the Heat Related Pathologies Plan, otherwise known as the "Hot Weather Plan," specifically relating to the practice of opening inmate cell doors to increase ventilation during Stage I, II, and III heat alerts. (*Id.* at 26.) Given the placement of this document within the FAC, it is unclear whether Plaintiff received this in connection with the Appeal Response. Still, it appears that the Appeal Response was referencing the cell door procedures detailed in this July 28, 2017 memorandum.

(*Id.*) The FAC does not contain a final response to Plaintiff's Third Level Review request.

Based on the foregoing allegations and supporting documents, Plaintiff brings claims pursuant to the Eighth Amendment of the United States Constitution and the California Elder Abuse and Dependent Adult Civil Protection Act, Cal. Welf. & Inst. Code §§ 15610, *et seq.* ("Elder Abuse Act"), alleging that Defendants Secretary of CDCR Ralph Diaz and Prison Warden Dean Borders violated Plaintiff's rights by failing to provide adequate heating and ventilation. (*Id.* at 3, 5, 6.)[4] Plaintiff sues these defendants in both their individual and official capacities. (*Id.* at 3.) He seeks (1) prospective relief in the form of (a) an emergency injunction to lower temperatures at the facility, (b) a policy for taking action during a heat or cold wave, and (c) a practice of maintaining temperatures between 60 and 88 degrees Fahrenheit for the benefit of heat- and cold-sensitive prisoners (*Id.* at 9, 10); and (2) costs of proceedings (*Id.* at 5.)

//
//
//

---

[4] In addition, in a kitchen-sink approach and randomly scattered throughout the FAC, Plaintiff alludes to a host of other concerns regarding conditions that he and/or others are suffering or have suffered, including violation of the "Equal Protection Clause," failure to provide adequate food, lack of exercise equipment, insufficient visitation, too few phones, difficulties in reaching top bunks, no fish kits upon arrival, no hygiene (toothpaste), inadequate law library, no indoor visits, no family visits, no marriages or conjugal visits. (FAC 7, 8, 13, 14.) Because Plaintiff fails to provide facts to support these claims, as he must (*see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)), the Court finds that these conclusory statements are insufficient to state a claim to relief that is plausible on its face, and reviews the FAC in relation to Plaintiff's Elder Abuse Act and Eighth Amendment claims premised on improper heating and ventilation. *See id.* (explaining that a pleading is insufficient if it contains only "labels and conclusions" or "'naked assertion[s]' devoid of 'further factual enhancement'") (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)).

## III. STANDARD OF REVIEW

Federal courts must conduct a preliminary screening of any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity, or in which a plaintiff proceeds *in forma pauperis*. 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b). The court must identify cognizable claims and dismiss any complaint, or any portion thereof, that is: (1) frivolous or malicious, (2) fails to state a claim upon which relief may be granted, or (3) seeks monetary relief from a defendant who is immune from such relief. *Id.*

When screening a complaint to determine whether it fails to state a claim upon which relief can be granted, courts apply the Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)") standard. *See Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012) (applying the Rule 12(b)(6) standard to Section 1915(e)(2)(B)(ii)); *Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (applying the Rule 12(b)(6) standard to Section 1915A). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1122 (9th Cir. 2013) (quoting *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008)).

Rule 12(b)(6) is read in conjunction with Federal Rule of Civil Procedure 8(a) ("Rule 8"), which requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *See Li v. Kerry*, 710 F.3d 995, 998 (9th Cir. 2013). In reviewing a motion to dismiss, the court will accept factual allegations as true and view them in the light most favorable to the plaintiff. *See Park v. Thompson*, 851 F.3d 910, 918 (9th Cir. 2017) (citing *N.M. State Inv. Council v. Ernst & Young LLP*, 641 F.3d 1089, 1094 (9th Cir. 2011). Although "detailed factual allegations" are not required, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Conclusory allegations of law . . . are

insufficient . . . ." *Park*, 851 F.3d at 918 (first ellipsis in original) (*quoting Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001)). Rather, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 662. "If there are two alternative explanations, one advanced by defendant and the other advanced by plaintiff, both of which are plausible, plaintiff's complaint survives a motion to dismiss under Rule 12(b)(6)." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

Where a plaintiff is *pro se*, particularly in civil rights cases, courts should construe pleadings liberally and afford the plaintiff any benefit of the doubt. *See Wilhelm*, 680 F.3d at 1121 (9th Cir. 2012). "[B]efore dismissing a pro se complaint the district court must provide the litigant with notice of the deficiencies in his complaint in order to ensure that the litigant uses the opportunity to amend effectively." *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012) (*quoting Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992)). A court should grant a *pro se* plaintiff leave to amend a defective complaint "unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment." *Akhtar*, 698 F.3d at 1212.

## IV. DISCUSSION

### A. The Allegations in the FAC Are Insufficient to State an Eighth Amendment Claim Against Either Defendant.

The treatment a prisoner receives in prison and the conditions under which the prisoner is confined are subject to scrutiny under the Eighth Amendment, which prohibits cruel and unusual punishment. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). The Eighth Amendment "embodies 'broad and idealistic concepts of

7

dignity, civilized standards, humanity, and decency . . . ,' against which we must evaluate penal measures." *Estelle v. Gamble*, 429 U.S. 97, 102 (1976) (quoting *Jackson v. Bishop*, 404 F.2d 571, 579 (8th Cir. 1968)). Although the Eighth Amendment does not mandate that prisons be comfortable (*Rhodes v. Chapman*, 452 U.S. 337, 349 (1981)), or that they provide every amenity that a prisoner might find desirable (*Hoptowit v. Ray*, 682 F.2d 1237, 1246 (9th Cir. 1982)), it also will not permit inhumane prison conditions. *See Farmer*, 511 U.S. at 832.

An inmate complaining of conditions of confinement must allege facts that, if true, would satisfy both prongs of a bifurcated test. First, the plaintiff must allege that, objectively, the deprivation alleged is "sufficiently serious" such that it results in the denial of "the minimal civilized measure of life's necessities." *Farmer*, 511 U.S. at 834. "Prison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety." *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000), *cert. denied*, 532 U.S. 1065 (2001). "The circumstances, nature, and duration of a deprivation of these necessities must be considered in determining whether a constitutional violation has occurred. 'The more basic the need, the shorter the time it can be withheld.'" *Id.* (citing *Ray*, 682 F.2d at 1259).

Second, from a subjective point of view, the plaintiff must allege that the defendants acted with a sufficiently culpable state of mind (*i.e.*, with "deliberate indifference"). *Wilson v. Seiter*, 501 U.S. 294, 298-99 (1991). "A prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.

The Court finds that Plaintiff has alleged facts sufficient to satisfy the objective prong of "inhumane prison conditions." *See id.* at 838. Ventilation is a

8

fundamental attribute of "shelter" and "sanitation," both of which are basic Eighth Amendment concerns. *See Toussaint v. McCarthy*, 597 F. Supp. 1388, 1409 & n.39 (N.D. Cal. 1984). "Inadequate 'ventilation and air flow' violates the Eighth Amendment if it 'undermines the health of inmates and the sanitation of the penitentiary.'" *Keenan v. Hall*, 83 F.3d 1083, 1090 (9th Cir. 1996), *amended*, 135 F.3d 1318 (9th Cir. 1998) (quoting *Hoptowit v. Spellman*, 753 F.2d 779, 784 (9th Cir. 1985)). Here, Plaintiff alleges that his cirrhotic liver causes him to be heat- and cold-sensitive (FAC 22) and that he has suffered a second degree burn or was otherwise harmed as a result of the heat that is created from the lack of ventilation in his cell. (*Id.* at 8.) Plaintiff also alleges that "prisoner's [sic] frequently experience weakness, dizziness and nausea due to extreme heat conditions, which also make it hard for prisoner's [sic] to breathe." (*Id.* at 10.) The Patient Care orders that Plaintiff attaches to the FAC confirm these allegations: "needs to have back checked, burned from heat in the building"; "upper back burned sensitive to heat and cold." (*Id.* at 27-31.)

However, the Court also finds that Plaintiff has failed to allege facts sufficient to satisfy the subjective prong of "deliberate indifference." To begin with, other than conclusory allegations that this Court need not accept (*see Iqbal*, 556 U.S. at 678), the FAC contains no express allegation that either Defendant personally was involved in the inadequate ventilation that gives rise to Plaintiff's Eighth Amendment claim. The only allegations that in any way tie these Defendants to Plaintiff's concerns are as follows:

- Respondents refused to "grant relief made by Petitioner" (FAC 5);
- Defendants violated the claims of inadequate heating and ventilation, which is a basic Eighth Amendment concern (*Id.* at 6);
- Defendants have a caretaking or custodial relationship with Plaintiff (*Id.* at 8);
- The prison officials deprived this prisoner . . . of the minimal civilized

9

measures of life's necessities (*Id.* at 10);

- The prison officials acted with deliberate indifference in doing so (*Id.* at 11); and
- These prison officials are liable for denying humane conditions of confinement within prison (*Id.*).

Even assuming that the terms "Respondents," "Defendants," and "the/these prison officials" refer to Defendants Garcia and Borders, these allegations fail to satisfy the *Iqbal* requirement of pleading sufficient factual content to allow this Court to draw a reasonable inference that either of these Defendants is liable for the alleged conduct. *See Iqbal*, 556 U.S. 678.

Moreover, Plaintiff's own documents belie his allegations of "deliberate indifference." The Appeal Response letter of September 4, 2018, signed by Defendant Warden Borders, evidences affirmative efforts by the Prison to respond to Plaintiff's concerns. (FAC 20-21.) Plaintiff's requests to have prison officials create a policy for taking action during a heat wave and to fix the air and ventilation in the buildings were granted partially. (*Id.* at 21.) Indeed, the Appeal Response letter specifies that the prison was then undergoing a project to replace and upgrade the cooling and ventilation systems and had cooling procedures to be set in place when the institution reached a Stage II heat alert. (*Id.*)

To the extent that Plaintiff's Section 1983 claim against Defendants Secretary Garcia and Warden Borders is based on their role in the denial of Plaintiff's administrative appeals, the FAC allegations are insufficient to state a Section 1983 claim for three reasons. First, there are no allegations that Defendant Garcia was in any way involved in Plaintiff's appeal. Indeed, the Appeal Response letter of September 4, 2018 was signed only by Warden Borders. (*Id.* at 20-21.) Second, Warden Borders granted in part Plaintiff's second-level appeal, dispelling any concerns that Warden Borders "denied" Plaintiff's appeal, as he alleges. Third, and in any event, the Ninth Circuit has held that a prisoner has no constitutional right to

an effective grievance or appeal procedure. *See Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003), *cert. denied*, 541 U.S. 1063 (2004); *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988); *see also, e.g., George v. Smith*, 507 F.3d 605, 609-10 (7th Cir. 2007) (holding that only persons who cause or participate in civil rights violations can be held responsible and that "[r]uling against a prisoner on an administrative complaint does not cause or contribute to the violation"); *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (holding that prison officials whose only roles involved the denial of the prisoner's administrative grievances could not be held liable under Section 1983), *cert. denied*, 530 U.S. 1264 (2000); *Wright v. Shapirshteyn*, No. CV-1-06-0927-MHM, 2009 WL 361951, at *3 (E.D. Cal. Feb. 12, 2009) ("[W]here a defendant's only involvement in the allegedly unconstitutional conduct is the denial of administrative grievances, the failure to intervene on a prisoner's behalf to remedy alleged unconstitutional behavior does not amount to active unconstitutional behavior for purposes of § 1983."); *Velasquez v. Barrios*, No. 07cv1130-LAB (CAB), 2008 WL 4078766, at *11 (S.D. Cal. Aug. 29, 2008) ("An official's involvement in reviewing a prisoner's grievances is an insufficient basis for relief through a civil rights action.").

Finally, to the extent Plaintiff seeks to impose Section 1983 liability on Defendants Secretary Garcia and Warden Borders premised on the acts of their respective subordinates, such a claim is not cognizable because supervisory personnel generally are not liable under Section 1983 on any theory of *respondeat superior* or vicarious liability in the absence of a state law imposing such liability. *See, e.g., Redman v. County of San Diego*, 942 F.2d 1435, 1446 (9th Cir. 1991) (en banc). Recently, in *Iqbal*, the Supreme Court reaffirmed that "government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior* liability." *Iqbal*, 556 U.S. at 676. A supervisor "is only liable for his or her own misconduct, and is not "accountable for the misdeeds

//

of [his or her] agents." *Id.* at 677. Mere knowledge of a subordinate's alleged misconduct is insufficient. *Id.*

Notwithstanding, the Ninth Circuit has concluded that, at least in cases where the applicable standard is "deliberate indifference" (such as for an Eighth Amendment claim), *Iqbal* does not foreclose a plaintiff from stating a claim for supervisory liability based upon the "supervisor's knowledge of and acquiescence in unconstitutional conduct by his or her subordinates." *See Starr*, 652 F.3d at 1207. "A defendant may be held liable as a supervisor under § 1983 'if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'" *Id.* (quoting *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989)). "The requisite causal connection can be established . . . by setting in motion a series of acts by others or by knowingly refus[ing] to terminate a series of acts by others, which [the supervisor] knew or reasonably should have known would cause others to inflict a constitutional injury." *Rodriguez v. County of Los Angeles*, 891 F.3d 776, 798 (9th Cir. 2018) (quoting *Starr*, 652 F.3d at 1207-08). "Even if a supervisory official is not directly involved in the allegedly unconstitutional conduct, '[a] supervisor can be liable in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others.'" *Keates v. Koile*, 883 F.3d 1228, 1243 (9th Cir. 2018) (quoting *Starr*, 652 F.3d at 1208). Specifically, supervisory liability may be alleged based on acquiescence with respect to a deficient policy that is the "moving force" behind a constitutional violation. *See Starr*, 652 F.3d at 1208; *see also Hansen*, 885 F.2d at 646 ("Supervisory liability exists even without overt personal participation in the offensive act if supervisory officials implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation.") (internal quotations omitted).

Here, the FAC fails to set forth any factual allegations that Defendants Secretary Diaz and/or Warden Borders had any knowledge of, or any connection with, any allegedly unconstitutional treatment that Plaintiff received at the hands of their subordinates. Nor does Plaintiff set forth any factual allegations that Secretary Diaz and Warden Borders personally promulgated any policy that had a direct causal connection with any alleged constitutional injury.[5]

Accordingly, the Court finds that the allegations of the FAC are insufficient to state an Eighth Amendment claim against Defendants Diaz and Borders.

**B.     The Allegations in the FAC Are Insufficient to State a Claim Under the Elder Abuse Act Against Either Defendant.**

California's Elder Abuse Act provides certain enhanced remedies to a plaintiff who proves abuse of an elder, *i.e.*, a person residing in California who is 65 years of age or older. *Carter v. Prime Healthcare Paradise Valley LLC*, 198 Cal. App. 4th 396, 404 (2011).

To state a claim under the Elder Abuse Act, a plaintiff must allege facts to satisfy two requirements. First, a plaintiff must allege a defendant subjected an elder to statutorily-defined physical abuse, neglect, or financial abuse. *Davenport v. Litton Loan Servicing, LP*, 725 F. Supp. 2d 862, 879 (N.D. Cal. 2010). The Elder Abuse Act defines abuse as "[p]hysical abuse, neglect, financial abuse, abandonment, isolation, abduction, or other treatment with resulting physical harm

---

[5] By way of contrast to the FAC here, the complaint in *Starr* specifically alleged numerous incidents in which inmates in Los Angeles County jails had been killed or injured because of the culpable actions of the subordinates of Sheriff Baca; specifically alleged that Sheriff Baca was given notice of all of these incidents, specifically alleged that Sheriff Baca also was given notice, in several reports, of systematic problems in the county jails under his supervision that had resulted in these deaths and injuries; and specifically alleged that Sheriff Baca did not take action to protect inmates under his care despite the dangers created by the actions of his subordinates, of which he had been made aware. *See Starr*, 652 F.3d at 1216.

or pain or mental suffering" or "[t]he deprivation by a care custodian of goods or services that are necessary to avoid physical harm or mental suffering." *Worsham v. O'Connor Hosp.*, 226 Cal. App. 4th 331, 336 (2014) (emphasis omitted) (quoting Welf. & Inst. Code § 15610.07(a)-(b)). The Elder Abuse Act defines neglect as "[t]he negligent failure of any person having the care or custody of an elder or a dependent adult to exercise that degree of care that a reasonable person in a like position would exercise." *Worsham*, 226 Cal. App. 4th at 336 (quoting Welf. & Inst. Code § 15610.07(a)). "Neglect includes, but is not limited to" "[f]ailure to assist in personal hygiene, or in the provision of food, clothing, or shelter[,]" and "[f]ailure to protect from health and safety hazards." *Worsham*, 226 Cal. App. 4th at 336 (quoting Welf. & Inst. Code § 15610.07(b)).

Second, a plaintiff must allege that a defendant acted with recklessness, malice, oppression, or fraud in the commission of the abuse." *Davenport*, 725 F. Supp. 2d at 879. "The Elder Abuse Act does *not* apply to simple or gross negligence . . . ." *Worsham*, 226 Cal. App. 4th at 336 (emphasis in original). "Oppression, fraud and malice involve intentional, willful, or conscious wrongdoing of a despicable or injurious nature." *Carter*, 198 Cal. App. 4th at 405 (quotations omitted) (quoting *Delaney v. Baker*, 20 Cal. 4th 23, 31 (1999)). "Recklessness involves deliberate disregard of the high degree of probability that an injury will occur and rises to the level of a conscious choice of a course of action ... with knowledge of the serious danger to others involved in it." *Carter*, 198 Cal. App. 4th at 405 (quotations omitted) (quoting *Delaney*, 20 Cal. 4th at 31-32). Thus, the Elder Abuse Act's enhanced remedies are available only for "'acts of egregious abuse' against elder and dependent adults." *Carter*, 198 Cal. App. 4th at 405 (quoting *Delaney*, 20 Cal. 4th at 35).

The FAC fails to allege a claim under the Elder Abuse Act for the same reasons it does not adequately plead "deliberate indifference." Moreover, even liberally construed, there are no allegations that would support an inference that

14

either Defendant acted with "recklessness, malice, oppression, or fraud," as required for liability under the Elder Abuse Act.

Accordingly, the Court finds that the allegations of the FAC are insufficient to state an Elder Abuse Act claim against Defendants Diaz and Borders.

## V. CONCLUSION

For the reasons stated above, the Court **DISMISSES** the FAC **WITH LEAVE TO AMEND.**

If Plaintiff still wishes to pursue this action, he shall file a Second Amended Complaint within **thirty (30) days** after the date of this Order. In any amended complaint, the Plaintiff shall cure the defects described above. Plaintiff shall not include new defendants or new allegations that are not reasonably related to the claims asserted in the Complaint. The Second Amended Complaint, if any, shall be complete in itself and shall bear both the designation "Second Amended Complaint" and the case number assigned to this action. It shall not refer in any manner to any previously filed complaint in this matter.

In any amended complaint, Plaintiff should confine his allegations to those operative facts supporting each of his claims. Plaintiff is advised, that pursuant to Federal Rule of Civil Procedure 8(a), all that is required is a "short and plain statement of the claim showing that the pleader is entitled to relief." **Plaintiff strongly is encouraged to utilize the standard civil rights complaint form when filing any amended complaint, a copy of which is attached.** In any amended complaint, Plaintiff should identify the nature of each separate legal claim and make clear what specific factual allegations support each of his separate claims. Plaintiff strongly is encouraged to keep his statements concise and to omit irrelevant details. It is not necessary for Plaintiff to cite case law, include legal argument, or attach exhibits at this stage of the litigation. Plaintiff also is advised to omit any claims for which he lacks a sufficient factual basis.

**The Court explicitly cautions Plaintiff that failure to timely file a Second Amended Complaint, or failure to correct the deficiencies described above, will result in a recommendation that this action, or portions thereof, be dismissed with prejudice for failure to prosecute and/or failure to comply with court orders pursuant to Federal Rule of Civil Procedure 41(b).**

If Plaintiff no longer wishes to pursue this action in its entirety or with respect to particular Defendants or claims, he voluntarily may dismiss all or any part of this action by filing a Notice of Dismissal in accordance with Federal Rule of Civil Procedure 41(a)(1). **A form Notice of Dismissal is attached for Plaintiff's convenience.**

Plaintiff is advised that this Court's determination herein that certain allegations in the Complaint are insufficient to state a particular claim should not be seen as dispositive of such claims. Accordingly, although the undersigned Magistrate Judge believes that Plaintiff has failed to plead sufficient factual matter in the pleading, accepted as true, to state a claim for relief that is plausible on its face, Plaintiff is not required to omit any claim or defendant in order to pursue this action. However, if Plaintiff decides to pursue a claim in an amended complaint that the undersigned previously found to be insufficient, then pursuant to 28 U.S.C. § 636, the undersigned ultimately may submit to the assigned District Judge a recommendation that such claim may be dismissed with prejudice for failure to state a claim, subject to Plaintiff's right at that time to file objections. *See* Fed. R. Civ. P. 72(b); C.D. Cal. L.R. 72-3.

IT IS SO ORDERED.

DATED: December 14, 2018

_____
MARIA A. AUDERO
UNITED STATES MAGISTRATE JUDGE

Attachments:
Form Complaint;
Form Dismissal

16